## Deal *v.* Erie Coal & Coke Company, Appellant.

*Corporations—Elections—Supervision by Court of Equity— Equity practice—Masters in chancery—Equity Rule 60—Corporate stock—Illegal issue.*

1. A court of equity in the exercise of its undoubted authority to supervise and control a corporate election may appoint a master to hold the election, where it appears that stockholders have been fraudulently prevented from voting. There is nothing in Equity Rule 60 discontinuing the office of master in chancery "except in proceedings where decrees or interlocutory orders are to be executed or their execution supervised by an officer of the court" which would forbid the court to exercise this power; and it is not material that all questions which might be raised as to the right of stockholders to vote have not been previously determined by the court, or that the master in the performance of his administrative function may be compelled incidentally to pass upon the right of stockholders to vote their shares, if such right is questioned.

2. In such case, where the court has enjoined the holding of an election except under the supervision of the court, an election held by a minority of the stockholders who were not served with the injunction is void.

3. At a corporate election held by a master appointed by the court, it appeared that the corporation had issued to itself 160 shares of stock and pledged said stock with a bank as security for a note, with power of sale upon nonpayment thereof; the note was unpaid and the stock was sold and bought in by the bank, and was thereafter transferred to the bank on the books of the corporation. The master decided that the company had no power to issue stock to itself, that the bank took it with knowledge of its

illegality because it carried notice thereof on its face, and refused to allow the stock to be voted at the election. *Held,* the court did not err in dismissing exceptions to the report of the master.

Argued Jan. 5, 1915. Appeal, No. 34, Oct. T., 1915, by defendants, from decree of C. P. Somerset Co., Equity Docket, 1914, No. 7, in Equity, dismissing exceptions to report of master, in case of Levi Deal, Henry Brant, James M. Deal, Mrs. Henry F. Brant and Ezra Deal, v. Erie Coal & Coke Company, Perry C. Miller, H. L. Miller, Fred Rowe, E. M. Beachley, W. N. Moser, C. J. Rowe and J. C. Reed. Before BROWN, C. J., POTTER, ELKIN, STEWART, MOSCHZISKER, FRAZER, JJ. Affirmed.

Bill in equity for an injunction and to compel the holding of a corporate election under supervision of the court.

Exceptions to report of master. Before RUPPEL, P. J.

The facts appear in Deal v. Erie Coal & Coke Company, 246 Pa. 552, and in the opinion of the Supreme Court.

The court dismissed the exceptions. Defendants appealed.

*Errors assigned* were in dismissing the exceptions and the decree of the court.

*J. A. Berkey,* with him *John B. Greer, Thomas H. Greer,* and *C. L. Shaver,* for appellants.

*Chas. F. Uhl,* with him *Chas. H. Ealy, Ross R. Scott* and *C. W. Walker,* for appellee.

OPINION BY MR. JUSTICE POTTER, January 18, 1915:

Levi Deal and four other plaintiffs filed this bill in equity in the Court of Common Pleas of Somerset County, Pennsylvania, against the Erie Coal & Coke Company, a corporation organized under the laws of

Pennsylvania, and seven individual defendants, who
were officers and directors of the corporation.   The
plaintiffs averred that they were stockholders in the
defendant company and alleging that at the previous
annual meeting they had been wrongfully prevented
from voting, and that they had reason to apprehend
similar treatment at the next annual meeting, they
prayed that the defendants be enjoined from holding
the annual stockholders' meeting for the election of di-
rectors, which was fixed by the by-laws for July 14,
1914.   They asked that the court should fix the time and
place for holding this meeting, and that it would ap-
point a master to preside over the meeting, and to super-
vise and control the manner of holding the election, and
that after the election, the defendants should be required
to deliver the books, papers and property of the corpo-
ration to the board of directors which should be chosen
at the said meeting.   The court below granted a pre-
liminary injunction as prayed for, and on appeal the
decree was affirmed by this court.   (Deal v. Erie Coal
& Coke Co., 246 Pa. 552.)   On final hearing the court
below found the facts substantially as follows: The
Erie Coal and Coke Company is a Pennsylvania cor-
poration with an authorized capital stock of $150,000,
divided into 1,500 shares of the par value of $100 each.
Prior to July 14, 1913, 1,340 shares had been issued at
the price of $50 per share.   The principal office of the
company is at Meyersdale, Somerset County, Pennsyl-
vania, but the mines and the property of the company
are in Butler County, Pennsylvania.   At the annual
meeting for 1913, which was called in pursuance of the
by-laws for July 14, questions arose as to the right of
certain persons, including Levi Deal, one of the present
plaintiffs, to vote stock which they claimed to hold, and
the meeting was adjourned, without the election having
been completed, until August 23, 1913.   On that date
considerable feeling developed between the two factions
into which the stockholders had become divided, and

this feeling has since become intensified, each faction endeavoring to obtain control of the corporation, and charging the other with bad faith, mismanagement, and acts detrimental to the interests of the stockholders. The election resulted in the choice of seven directors who represented the faction who were in control of the election, and who are the defendants in this suit. On June 3, 1914, the defendant company, being indebted to the Second National Bank of Meyersdale, in the sum of $3,105.68, by resolution of its directors, issued a certificate of stock in the name of the corporation, which it assigned to the bank as security for the indebtedness, and on July 2, the bank offered this stock for sale, and purchased it for itself, at a price equal to the amount of the debt and interest, and a new certificate for the 160 shares of stock was issued to the bank. The annual meeting of the stockholders of the company for 1914 was fixed by the by-laws, for Monday, July 13. The present bill was filed on July 7, and a special preliminary injunction was granted, which was afterwards continued until final hearing. It appears however, that on the evening of July 13, certain stockholders who were not parties to the bill, and who were not served with the injunction, and certain persons holding proxies from other stockholders, met at the office of the company and held an election for directors. Only 294 shares of stock were voted, including the 160 shares which had been issued to the Second National Bank. The men who were chosen as directors at this meeting, who are the codefendants with the corporation in the present bill, subsequently met and organized, and chose the usual officers. From the evidence presented to it, the court below reached the conclusion that: "There is great reason to apprehend that disorder, violence, confusion, and possibly blood-shed, will occur, and unlawful, unfair and fraudulent means will be resorted to, to prevent the holding of a fair, just and legal election, unless such election is held under the supervision and control of

the court." A decree nisi was therefore entered, appointing a master to supervise and conduct the holding of an election. Exceptions to the findings, and to the decree of the court below were overruled, and the decree was made final, and Monday, October 19, 1914, was designated as the date on which the election should be held. On the day fixed by the court, the master held an election at the company's office in Meyersdale, at which various questions as to the eligibility of votes were raised by objection to votes offered, which were ruled upon by the master. He made a report stating the various objections, with his rulings thereon, and containing the testimony taken by him. From his report it appeared that all the capital stock of the company was voted, with the exception of the 160 shares standing in the name of the Second National Bank, which the master excluded, and 10 other shares, the holder of which did not offer to vote. Four members of plaintiffs' faction, and three representatives of their opponents were elected. Exceptions to the master's report were overruled by the court below, and the report was confirmed and a final decree was entered declaring that the seven persons reported as having been elected, should be directors of the Erie Coal & Coke Company for the succeeding year, and authorizing them to exercise the rights incident to their offices, and enjoining the former directors and officers from interfering with them. Exceptions were filed to this decree, which were all overruled. Defendants have appealed, and their counsel have filed forty-two assignments of error, which in their argument have been classified and discussed in five groups. The first division relates to the correctness of the findings of fact, by the court below, with reference to disorder at the meetings of the stockholders in 1913. The testimony shows that there was contention at these meetings, as well as some disorder and confusion, due perhaps in great measure to the intemperate manner and vigorous expressions of counsel, in their arguments for the con-

tending factions. The statement by the court that personal violence was probably avoided by the withdrawal of the Deal faction, was not in that respect a finding of fact, but was merely a surmise. The record of this case clearly shows that in fact there was much ill-feeling between the two factions, which has frequently been displayed, since August 23, 1913. The findings as to this matter, which are made the subject of assignments of error, were qualified by the court below, in the express finding that there was no disorder of a serious character, and that such disorder as occurred was not accompanied by violence or breach of the peace. In ten of the assignments of error, complaint is made of the findings, that at the meeting of August 23, 1913, the election officers acted fraudulently in refusing certain votes offered by Levi Deal upon stock of which he was the owner, and upon which he was entitled to vote. The court did hold, and it seems to have been fully justified in its conclusion, that Deal was clearly entitled under the law to vote this stock, and the refusal to permit him to do so, was in fraud of his legal rights. The evidence was sufficient to sustain these findings. But whatever took place at the meeting of August 23, 1913, is not now of any great importance, for it appears that at the subsequent election, in 1914, all of the appellants took part, and three of them were elected directors.

The second division under which the assignments were discussed in the argument, relates to the validity of the election held July 13, 1914. It appears from the record that on July 7, 1914, the court below awarded an injunction against the officers and directors of the company to restrain them from holding the annual meeting and election, on July 13. On the evening of that date, however, certain stockholders of the company, who were not made parties to the bill and who had not been served with the injunction, and who held less than one-quarter of the stock of the company, met at the office of the company and proceeded to vote for directors, all of the

persons there chosen being defendants in the present suit. The preliminary injunction had been served upon them, but nevertheless they afterwards organized as directors and appointed officers of the company. The court below held that their action in this respect, was a violation of the injunction, and was illegal and void. The conclusion of the trial court in this respect, is clearly right. After the court had taken jurisdiction of the matter in controversy, and had issued an injunction forbidding the holding of an election until the further order of the court, its action in this respect, could not be avoided, or nullified, by a minority of the stockholders, even though they individually had not been served with the injunction.

In the third division, into which the assignments were grouped, the question is raised as to the power of the court below under the circumstances to appoint a master to hold the election. It is contended that under Equity Rule 60, discontinuing the office of master in chancery, the court was without power to appoint a master to conduct a corporate election, or that at least it could not do so, until it had first determined all questions which might be raised as to the right of stockholders to vote at such election. But the rule in question contains the following clause: "Except in proceedings where decrees or interlocutory orders are to be executed, or their execution supervised by an officer of the court." We regard the facts of the present case as bringing it directly within the exception. The court below by its decree directed that an election should be held at a certain time and place and in a certain manner, and appointed a master to execute this order and supervise the holding of the election, with the special purpose of preventing disorder or violence. It would be manifestly impossible for a court to foresee, and pass upon beforehand, all the questions which might arise with respect to the rights of all the electors, when they should claim the right to vote. But by prescribing the time and place for holding

the election, and by appointing a master to supervise it, and to see that it was lawfully held, the trial court itself provided an opportunity for all stockholders to exercise their lawful rights.   Only votes which were offered, and to which objection was made, could become the subject of consideration.    It could not be known beforehand whether any objection to any of the votes offered, would be made.   The power of a court of chancery to control and supervise the election of directors was invoked in this case, in advance of the election, to prevent fraud or force, and to make sure that the right of each stockholder to vote if questioned, should be passed upon by an impartial and distinterested person, whose decision was subject to immediate review and correction by the court.   The master was in this case merely the executive or administrative arm of the court.   The abuse which was corrected in abolishing the office of master in chancery, in so far as its general use is concerned, was well known and recognized.   A tendency had grown up whereby in many cases the duty of determining the controversy presented, was shifted from the judges of the Court of Chancery, to masters appointed by them.   In the opinion of this court in Com. v. Archbald, 195 Pa. 317, Mr. Justice MITCHELL referred to this feature and said: "It was to obviate this tendency among other reasons, that the present rules were adopted by this court.   But the office of master though 'discontinued' with reference to its general use in the then existing practice, was not abolished.   It is a necessary part of the equipment of a Court of Chancery, extending back at least to the time of Edward the third: Bennet, The Master's Office in the Court of Chancery, p. 1. By our rule, it is still continued 'in proceedings where decrees or interlocutory orders are to be executed.' "   Counsel for appellants have cited, and they rely upon, our decision in Yetter v. Delaware Valley R. R., 206 Pa. 485, as sustaining their contention that a master should not have been appointed in this case.   But there the controversy

related to a fundamental issue presented by the pleadings, as to an alleged over-issue of 5,000 shares of stock. The question raised might easily have been adjudicated by the court in advance of the election, and it should have been. In that case the appointment of a master was made on the day the bill was filed, without notice to the stockholder whose right to vote was challenged, and without an answer having been filed, or a hearing held. Our Brother BROWN there said (p. 487) : "When the appointment of the master was asked for, there was no decree nor interlocutory order pending in the court to be executed. The court had not even ordered the election; but the same was about to take place, as a matter of course, in accordance with the charter or by-laws of the company." In the present case, the court below passed in the first place, upon the fundamental question presented, which was whether the power of a Court of Equity to control and supervise an election, was properly invoked, upon the ground that by reason of fraud or other unlawful conduct on the part of certain stockholders, a fair and honest election could not be held. It then issued its interlocutory decree, fixing the time and place for holding the election, and a master was appointed to execute the decree, in the manner expressly pointed out by the court. In so far as it was possible then to do so, all the matters in dispute were passed upon by the court in advance of the election. No question then pending was referred to the master. In so far as the record showed, the duties which the master was likely to be called upon to perform, would be merely administrative. There was nothing to indicate that the duty to be discharged by the master, would be any more essentially judicial, than are those which are performed by the judges appointed to hold the ordinary corporate election. That some questions calling for the exercise of the judicial function, did as a matter of fact arise, was only incidental, and was apart from the main purpose of the appointment of the master, which was to see that

the election was properly and peacefully held. The master refused the offer of the Second National Bank of Meyersdale to vote 160 shares of stock which stood in its name. It appears that the coal company was indebted to the bank in the sum of about $3,100, for which it gave its promissory note, payable within a few days. The officers of the company also issued in the name of the company, a certificate for the 160 shares of capital stock, and assigned it to the bank, as collateral security for the note, giving the bank power on nonpayment of the note, to sell the stock at either private or public sale. The note was not paid on June 15, when it fell due, and on July 2, the bank offered the stock for sale, without public advertisement, and sold it to itself for a sum just sufficient to cover the amount of the note and interest. The same day, or the day following, the stock was transferred to the bank on the books of the coal company. The master held that the company had no power to issue stock to itself, that the issue was illegal and void, that the bank took it with knowledge of its illegality because it carried notice thereof on its face, and that therefore the bank acquired no title. In this he was but following the opinion of the court below in which this matter had already been considered and passed upon. It appears in the eighth finding of fact, and in the discussion of the law of the case by the trial judge. The manner in which this certificate was issued, its use as collateral to a loan having but a few days to run, the nonpayment of the note, the sale and purchase of the stock, and its transfer to the bank at a price far below its apparent value, all plainly indicate the existence of a plan to give to the faction then in control of the company, the advantage of the vote of these additional 160 shares at the ensuing election, without having paid to the company the fair equivalent in value of the stock. The court below was right in holding that these shares were illegally issued, and the offer to vote them, was properly rejected.

The right of certain stockholders to vote upon stock

standing in their name was challenged, by parties who claimed ownership of the stock. But the master overruled these objections for the reason that none of the objectors had complied with the Act of Assembly of May 26, 1893, P. L. 141, which provides that all objections to the voting of stock, which the books of the company show to have been regularly transferred to the holders, must be made in writing, supported by affidavit. This stock was therefore voted by the persons, who were, according to the books the owners of it. These rulings of the master were sustained by the court.

Objection was also made to the use of a proxy given by the executors of a stockholder who resided in another state, upon the ground that the evidence of the appointment of the executors was not duly certified under the Act of Congress. The master held that the certification was sufficient, and the votes were received. In this ruling he was sustained by the court. In its opinion overruling the exceptions to the master's report, the court below points out the fact that even if the exceptions to the allowance of these votes should all be sustained, the result of the election would not be changed. It is therefore apparent that even if there was any error in the rulings on these points, the appellants were not harmed thereby.

The assignments of error are all overruled. The decree of the court below is affirmed, and this appeal is dismissed at the cost of appellants.