# Gibson Distilling Company *v.* Netter, Appellant.

*. Trade-marks—Unfair trading—Name—Equity—Appointment of master—Accounting.*

On a bill in equity by a corporation styled the Gibson Distilling Company to enjoin a wrongful use of the name "Gibson" and to restrain unfair trading, a decree is properly entered restraining the defendant from selling a blend of inferior whiskey compounded of wine spirits, whiskey, prune juice and water, under the name of "Gibson's Cabinet......Whiskey."

In such a case the court may appoint a master to take testimony and report as to the nature and intent of the damage suffered by the plaintiff by reason of the illegal acts of the defendant. Such an appointment does not violate the equity rules of 1894 discontinuing the office of master in chancery, inasmuch as it is within the exception which provides that a master may be appointed "in proceedings where decrees or interlocutory orders are to be executed or their execution supervised by an officer of the court."

Argued April 20, 1915.   Appeal, No. 320, Oct. T., 1914, by defendant, from decree of C. P. No. 5, Philadelphia Co., March T., 1913, No. 1014, on bill in equity in case of Gibson Distilling Company v. David Netter, trading as David Netter & Company.  Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Bill in equity for an injunction to restrain the wrongful use of a trade name, and to enjoin unfair trading. Before RALSTON, J.

The court found as a fact that the defendant sold a whiskey under the name of "Gibson's Cabinet......Whiskey" and that it was a mixture of prune juice, wine spirits, water and whiskey.

The court entered a decree restraining the defendant from using the name Gibson, except in connection with the sale of plaintiff's product, and appointing a master to take testimony and report as to the nature and extent of the damage suffered by the plaintiff.

*Error assigned* was the decree of the court.

*Walter Biddle Saul,* for appellant.—The court had no power to appoint a master: Palethorp v. Palethorp, 184 Pa. 585; Com. v. Archbald, 195 Pa. 317; Yetter v. Del. Valley R. R. Co., 206 Pa. 485.

*Ira J. Williams,* of *Simpson, Brown & Williams,* for appellee, cited as to the appointment of the master: Green v. Prince Metallic Paint Co., 25 Pa. Superior Ct. 415; Hinnershitz v. United Traction Co., 206 Pa. 91; Shields v. Aitken, 236 Pa. 6.

OPINION BY HEAD, J., March 1, 1916:

The bill filed in the present case belongs to the not infrequent class in which a plaintiff seeks to prevent the unlawful use of a trade name or trade-mark and to have damages assessed for the alleged piracy. This bill sets forth elaborately and in great detail the nature and character of the alleged invasion by the defendant of the plaintiff's rights. A responsive answer was filed and the case proceeded regularly to a hearing before his honor, Judge RALSTON, of the court below. A mass of testimony was taken, and from a consideration of the whole of it, the learned chancellor reached conclusions of fact and law, which, if justified by the evidence, fully warranted the injunctive decree which was entered.

The appellant complains first that the evidence was not sufficient to support any injunctive decree, and second, that even if a decree of that character might be warranted, the one actually entered was broader in its scope and effect than could have been properly predicated on the averments of the bill or the supporting evidence. As to these two grounds of complaint, we deem it sufficient to say that an examination both of the pleadings and evidence leads us to the conclusion that the decree, as made, was properly supported. If the evidence adduced by the plaintiff was credible, it is not easy to escape the

conclusion that the defendant was seeking to launch his own goods into the channels of commerce in competition with those of the plaintiff by the unjustifiable use of the name and trade-mark of the latter. Such attempts find no encouragement in courts of equity, and this court and the Supreme Court have many times so declared in cases decided within very recent years. The views of this court in such cases were fully stated in Standard Cigar Co. v. Goldsmith, 58 Pa. Superior Ct. 33. There is no necessity to repeat here what was said there or refer again to the line of authorities there cited. We are satisfied therefore that the injunctive decree entered by the learned chancellor was fully warranted and should not be disturbed.

By its bill the plaintiff sought not only a decree which would restrain the defendant from the further illegal use of its name or trade-mark, but also for an accounting of the profits that had accrued to the defendant by reason of his invasion of the plaintiff's right. The learned judge below properly held that the facts found in the present case brought it fairly within the line of cases where such accounting necessarily follows the relief which was the main object of the bill. In making the decree complained of, the court directed that an account be taken by a master therein appointed, who was to report to the court the nature and extent of the damage suffered by the plaintiff by reason of the illegal acts of the defendant. We are urged to say that so much at least of the decree was void and of no effect because by the new equity rules, adopted in 1894, "the office of master in chancery is hereby discontinued." We recognize that the equity rules have all of the binding force and effect of a statute. It is our duty to construe and administer them according to their true tenor and effect just as we would had they emanated from the legislature. The mischief sought to be remedied by the adoption of the rule, a portion of which we have above quoted, was well understood. Under the old practice the deci-

sion, for all practical purposes, of every controlling matter of fact and law was submitted to a master. The purpose of the rule was to break up such practice and require cases in equity, like those at law, to be determined by a judge or tribunal recognized by the law and selected in the manner required by law.

But the rule referred to did not stop with the language we have above quoted. The entire clause of the rule, here pertinent, is as follows: "The hearing of cases in equity shall be conducted before the judge sitting as a chancellor or before a referee (selected by the parties), and the office of master in chancery is hereby discontinued except in proceedings where decrees or interlocutory orders are to be executed or their execution supervised by an officer of the court; as in partition, the sale of real estate, the execution of deeds and the like." In the present case the trial was conducted in precise accordance with the equity rules until a decree was entered by the chancellor enjoining the defendant, in the manner prayed for, and determining that he must account. There remained but the execution of the decree thus formally entered.

It appears to us the appointment of a master to do, under the eye and subject to the approval of the court, the administrative work necessary to the execution of the decree is neither in letter nor in spirit a violation of the equity rule. Warrant for this conclusion is found not only in the letter of the rule itself and the spirit which permeates it but in the construction of the rule placed upon it by the Supreme Court. From Deal v. Erie Coal Company, 248 Pa. 48, we quote the following excerpts from the opinion of Mr. Justice POTTER: "In the third division, into which the assignments were grouped, the question is raised as to the power of the court below under the circumstances to appoint a master to hold the election. It is contended that under Equity Rule 60, discontinuing the office of master in chancery, the court was without power to appoint a master to conduct a

corporate election, or that at least it could not do so, be raised as to the right of stockholders to vote at such election. But the rule in question contains the following clause: 'Except in proceedings where decrees or interlocutory orders are to be executed, or their execution supervised by an officer of the court.' We regard the facts of the present case as bringing it directly within the exception......The master was in this case merely the executive or administrative arm of the court. The abuse which was corrected in abolishing the office of master in chancery, in so far as its general use is concerned, was well known and recognized. A tendency had grown up whereby in many cases the duty of determining the controversy presented, was shifted from the judges of the Court of Chancery, to masters appointed by them. In the opinion of this court in Com, ex rel., v. Archbald, 195 Pa. 317, Mr. Justice MITCHELL referred to this feature and said: 'It was to obviate this tendency among other reasons, that the present rules were adopted by this court. But the office of master though "discontinued" with reference to its general use in the then existing practice, was not abolished. It is a necessary part of the equipment of a Court of Chancery, extending back at least to the time of Edward the third......By our rule, it is still continued in proceedings where decrees or interlocutory orders are to be executed.' "

As we view this language and the sound reasoning it expresses, we can reach no other conclusion than that the appointment of a master in the present case to take the account, was but an appointment looking to the execution of a decree already properly entered by a chancellor and that such appointment was in no sound sense a violation of the equity rules. The assignments of error are therefore overruled.

Judgment affirmed.

The decree of the court by RALSTON, J., was as follows:

And now, to wit, this 17th day of November, 1914, this cause came on to be heard at this term, and was argued by counsel, and upon consideration thereof, it is ordered, adjudged and decreed as follows, viz:

1. Plaintiff Gibson Distilling Company has the exclusive right to the use of the name "Gibson" or "Gibson's" either alone or in conjunction with other special names or brands as a designation of whiskey, and the exclusive right to distill, manufacture and blend whiskey sold under the name "Gibson" or "Gibson's" either alone or in conjunction with other special names or brands.

2. That the name "Gibson's Cabinet" as applied to whiskey is the exclusive property of the plaintiff and is a valuable asset of its business, and the plaintiff has the exclusive right to manufacture, distill and blend whiskey to be sold under the name "Gibson's Cabinet," either alone or in conjunction with additional words or names.

3. That the defendant, David Netter, his agents, servants and employees, and each of them, be and they are hereby perpetually restrained and enjoined from using the word "Gibson" or "Gibson's" preceding the word "whiskey" as a designation for the brand or brands thereof on any other whiskey except that distilled and sold by plaintiff, and from using the said word "Gibson" or "Gibson's" or any colorable or grammatical variation thereof as a designation for the brand or brands of whiskey except upon whiskey distilled and sold by plaintiff.

4. That the defendant, David Netter, his agents, servants and employees, and each of them, be and they are hereby perpetually restrained and enjoined from using the words "Gibson's Cabinet" or "Gibson's Cabinet XXXX," or any other designation in which the words

"Gibson's Cabinet" are employed or any colorable or grammatical variation thereof as a designation for a brand or brands of whiskey except upon genuine Gibson whiskey distilled, blended and sold exclusively by the plaintiff under the name "Gibson's Cabinet."

5. That the defendant, David Netter, his agents, servants and employees, and each of them, be and they are hereby perpetually restrained and enjoined from selling as "Gibson's" blended whiskey anything except Gibson's whiskey distilled and blended by plaintiff.

6. That Thomas Ridgway, Esq., is hereby appointed master and the defendant is required to render before him a full, true and perfect account of all sales of whiskey made by him under the name "Gibson's Cabinet XXXX," and of other whiskey sold by him as Gibson's whiskey not distilled and blended by plaintiff, and of the profits of every description which defendant has made by the use of the words "Gibson," "Gibson's," "Gibsons'" or "Gibsons," or any grammatical variation thereof in the sale of whiskey as descriptive thereof, which whiskey was not distilled, blended and sold by plaintiff, and the said master is further directed to ascertain and report to the court the loss or damage inflicted upon plaintiff by reason of injury to the reputation of plaintiff's said whiskey as well as of the business and profits diverted from plaintiff to the defendant occasioned by and growing out of the wrongful acts of the defendant in the sale of imitation "Gibson" whiskey, and that the defendant pay to plaintiff all such profits and damages so found.

7. That the defendant pay the costs of this proceeding.