# Hughes *v.* Ireland, Appellant.

*Contracts—Agreement not to engage in business—Violation—Equity—Accounting.*

Where, upon the sale of a business, the vendors agree not to engage in such business in the said territory for a period of five years, and afterwards violate the agreement, an injunction will be granted, restraining the vendor from continuing to engage in such business.

In such case, the court may appoint a master to take testimony and report as to the nature and extent of the damage the plaintiff suffered by reason of the illegal acts of the defendant. Such an appointment does not violate Equity Rule 60 discontinuing the office of Master in Chancery, inasmuch as it is within the exception which provides that a master may be appointed "in proceedings where decrees or interlocutory orders are to be executed, or their execution supervised by an officer of the court.

*Equity—Accounting—Pecuniary damages—Evidence.*

Where actual pecuniary damages are sought, there must be evidence of their existence and extent, and some data from which they may be computed. No substantial recovery may be based on mere guess work or inference; without evidence of facts, circumstances and calculations, justifying an inference that the damages awarded are just and reasonable compensation for the injury suffered. If the plaintiff fails to furnish sufficient data to estimate the actual damages sustained by the purchaser of the good will of a business, by reason of the acts of the seller, his recovery must be restricted to nominal damages.

Argued April 28, 1920.   Appeal, No. 69, April T., 1920, by defendant, from decree of C. P. Allegheny County, July T., 1918, No. 2196, in equity in case of George C. Hughes v. W. E. Ireland.   Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.   Modified.

Bill in equity for an injunction to restrain the defendant from continuing in the coal and ice business, and for an accounting.   Before WASSON, J.

The court found as a fact that the defendant had engaged in the coal and ice business, in violation of his covenant and agreement not to engage in such business, and subsequently entered a decree, enjoining the defendant from engaging in such business and directing that he account to the plaintiff for all transactions done in violation of his covenant.   A master was appointed to take testimony and report as to the nature and extent of damage suffered by the plaintiff.   Judgment in favor of the plaintiff for $1,120 and costs of suit.   Defendant appealed.

*Error assigned* was in dismissing exceptions to the master's report and the decree of the court.

*Joseph R. Conrad,* for appellant.

*Sidney J. Watts,* and with him *James G. Marks,* for appellee.

OPINION BY TREXLER, J., July 14, 1920:

The defendant Ireland was engaged in the coal, ice, general hauling and contractors' supply business in the Borough of Aspinwall.   He entered into an agreement with the plaintiff for the sale of the equipment incident to the business together with the good will.   The contract provided that the defendant and his wife should not for a period of five years, engage in such business within the borough.   In violation of his agreement the

defendant did business within the prohibited territory. The plaintiff brought suit in equity and after hearing the court restrained the defendant from engaging in business within said borough. Later on it was ordered that the bill be taken pro confesso in default of an answer and the court found certain facts and conclusions of law and entered a decree permanently enjoining the defendant from engaging in said business and directing that he account to the plaintiff for all transactions done in violation of his covenant. The court submitted the matter to a member of the bar to state an account of such transactions. It was found that the plaintiff was entitled to the sum of eleven hundred and twenty dollars and the court entered a decree accordingly.

The first question raised is whether the proceedings were regular. It is argued that under Equity Rule 60, the office of master in chancery is abolished, and that the appointment of a master is prohibited except in proceedings where decrees or interlocutory orders are to be executed or their execution supervised by an officer of the court, as in partition, the sale of real estate, the execution of deeds and the like. It may be noted here that there was a definite decree supported by findings of fact and conclusions of law that the plaintiff was entitled to relief and that the defendant was enjoined during the period covered by the contract from engaging in business in said borough. The master's duty was confined to one single thing and that was, to state an account between the parties of all transactions involved in violation of the contract. It is true he did not formally set out an account but he found the sum due from the defendant to the plaintiff and the items embraced in its ascertainment. They were but two.

We repeat what was said by our Brother HEAD in Gibson Distilling Co. v. Netter, 62 Pa. Superior Ct. 136, "the decree having not only restrained the defendant from the further prosecution of his illegal business, but directed an accounting of the profits that accrued to the defend-

ant by reason of his invasion of the plaintiff's rights, an accounting necessarily followed the relief which was the main object of the bill." In that case as in this, the court directed an accounting by a master. The same objection was raised that the office of master in chancery was abolished. We held that after a decree enjoining the defendant, the appointment of a master was merely administrative work necessary to the execution of the decree and was not in letter nor in spirit a violation of the equity rule.

The next objection is that there was not sufficient evidence to support the final decree. A decree was entered for the sum of eleven hundred and twenty dollars. From this amount eight hundred and seventy dollars arises from a transaction known as the M. O'Herron Company contract which the defendant entered into in violation of his covenant and for which he received the sum of twenty-nine hundred dollars. If the plaintiff had had the work he would have made eight hundred seventy dollars. We all think there was sufficient testimony to support the finding of this amount as due to the plaintiff.

The master finds that "In addition to the loss by reason of the O'Herron contract, there is testimony undisputed, which, in the opinion of the master, sufficiently shows that the good will of plaintiff's business suffered through the action of defendant in breach of his contract, and that although specific cases and figures were not submitted, nevertheless the plaintiff sustained actual loss through other acts of defendant than the one complained of in the O'Herron Company matter. The whole course of conduct of defendant as it appears from the testimony evidenced a deliberate intent to violate the spirit of his agreement and to secure for himself gain through carrying on transactions in the manner of a third party and by openly inviting persons to deal with him in business in and about the borough of Aspinwall. The master is therefore of the opinion that a substantial

allowance should be made for his general loss and has included in the account an item of $250 to cover it." Passing the question whether it was within the scope of the master to pass upon this matter we think there was nothing to justify the finding. It is true that when the conduct of a defendant has been such as not to commend himself to the favor of a court of equity every doubt and difficulty will be resolved against him but we search through this record in vain to find any testimony on which to hang a definite finding. Generally speaking there must be some basis to estimate the damages where they are capable of computation. Where actual pecuniary damages are sought, there must be evidence of their existence and extent, and some data from which they may be computed. No substantial recovery may be based on mere guesswork or inference; without evidence of facts, circumstances, and data justifying an inference that the damages awarded are just and reasonable compensation for the injury suffered. We of course must recognize the fact where damages are incapable of ascertainment that there a different rule applies and in some cases substantial damages may be given without proof of actual loss. We do not think that the item we are considering comes within these exceptions. We have not been referred to any case which would support the position taken by the master. Instead all the authorities which we have found hold, that "Upon the breach of a contract of sale of the good will of a business, the measure of damages is the loss suffered by the purchaser by reason of the wrongful acts of the seller constituting the breach and in estimating such damages all the facts and circumstances tending to show the extent thereof may be considered by the jury; but, if the plaintiff fails to furnish sufficient data to enable the jury, with a reasonable degree of certainty and exactness, to estimate the actual damages sustained by the purchaser, then his recovery will be restricted to nominal damages": Shaw v. Jones, Newton & Co., 66 S. E. 240 (Ga.); Breeding v.

Tandy, 146 S. W. 732 (Ky.); Sessinghaus Milling Company v. Hanebrink, 152 S. W. 354 (Mo.); Raymond v. Yarrington et al., 73 S. W. 800 (Tex.); 3 Sutherland on Damages, sec. 658 (3d Ed.). If general loss is proven each particular item contributing to the total need not be shown. In the case before us there is as we have already observed nothing to base a finding other than on the O'Herron transaction, except that there was a violation of the agreement. Were the O'Herron deal excluded there could only be nominal damages shown. See 20 Cyc. 1282.

We therefore think that the court erred in its findings as to the amount of damages suffered by the plaintiff. As there are but two items entering into the judgment, the matter can be easily corrected by a modification of the decree. The decree is modified to the extent that the defendant, W. E. Ireland, pay to the plaintiff, George C. Hughes, the sum of eight hundred seventy dollars with interest, etc., instead of eleven hundred and twenty dollars, in all other respects to remain.

The costs of this appeal to be paid by the appellant.