In the Matter of the Dissolution of the Titusville Oil Exchange. Appeal of P. T. Witherop and Geo. A. Chase et al.

*Corporations—Proceeding for dissolution—Discretion of court—Appeal.*

The question whether the prayer of a petition for the dissolution of a corporation may be granted without prejudice to the public welfare or the interests of the corporation is addressed largely to the sound discretion of the court having jurisdiction, and the exercise of that discretion will not be reversed by the appellate court.

*Corporations—Meetings—Aim and end of supervision by courts.*

No hard and fast rules govern the proceedings of a corporation con-

vened to pass on the question of dissolution; the court intervenes only when necessary to secure a free and full expression and an accurate record of the will of the stockholders on the subject of the election. These aims being attained the courts will not intervene for mere informalities in the manner of holding the election.

Argued May 16, 1898.   Appeal, No. 33, April T., 1898, by respondents, from decree of C. P. Crawford Co., Feb. T., 1896, No. 130, dissolving the Titusville Oil Exchange.   Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY and PORTER, JJ.   Affirmed.

Petition of the Titusville Oil Exchange for permission to surrender all the powers contained in its charter and for a decree for the dissolution of the said corporation.   Before HENDERSON, P. J.

This case was before the Superior Court on appeal and in the report of the former hearing (Titusville Oil Exchange's Dissolution, 2 Pa. Superior Ct. 508), the petition and answer are set out in full.

Other facts sufficiently appear from the opinion of the court below, as follows:

The Titusville Oil Exchange is a corporation of the first class, with a capital stock of $40,000, divided into shares of $100 each, incorporated by the court of common pleas of Crawford county, by decree dated February 16, 1880; the object of which corporation is the erection of a building for the use of the members in the business of buying, selling, transferring and trading in petroleum and its products, and the establishment and maintenance of rules and regulations for the government of members of the association in that business. A meeting of the stockholders was duly convened in accordance with the constitution and by-laws of the corporation on the first day of February, 1896, for the purpose of considering:

"1. Whether the oil exchange corporation shall be dissolved.

"2. Whether its real estate and other property shall be sold."

The meeting was regularly organized by the election of Col. John J. Carter, president; C. E. Martin, secretary, who was also secretary of the corporation; and the appointment of John

McCort and E. C. Hoag, judges of election and tellers.  The roll of stockholders was called by the secretary and the object of the meeting stated by the chairman.  The tellers were sworn to perform their duties with fidelity.  The meeting was held in the assembly room of the oil exchange building, the same room in which meetings of the corporators were regularly held.  The chairman occupied a seat on a raised platform on the north side of the building, and the secretary and tellers occupied the same platform at the side of the chairman.  The stockholders generally occupied seats in front of the platform.

A vote on the propositions above referred to was taken by ballot; the tellers collecting the ballots in a hat or hats.  The ballots were taken to the desk at the platform beside the president, were examined by the tellers and secretary, and compared with the roll of stockholders.  As each ballot was examined and compared with the list of stockholders, it was noted upon a voting list and tally sheet kept by the tellers, giving the name of the voter, the number of his shares and how he voted.  This was done openly and publicly in the presence of the stockholders, with all the ballots one by one.  The footing of the tally sheet was then compared with the total number of ballots.  The number of shares and the number of stockholders who voted were counted and the result certified and signed by the secretary and tellers, and handed to the chairman, who publicly announced the result of the meeting.

Twenty-eight stockholders owning 311 shares of stock voted for dissolution.  Twenty-two stockholders owning thirty-six shares of stock voted against dissolution.  All of the stockholders who voted for dissolution were present except Mr. Howard, who was represented by proxy.  All of the stockholders who voted against dissolution were present except the Second National Bank, Mrs. Emery and E. O. Emerson, all of whom were represented by proxies.  Every stockholder who desired to vote did vote.  No person voted who was not a stockholder.  No stockholder was interfered with or hindered when voting.  The ballot of each stockholder who voted was counted and returned in accordance with his vote, and the result announced by the chairman was the actual result of the ballots cast.  The ballots were preserved by the secretary and tellers; were introduced in evidence at the hearing, and show conclu-

sively how each stockholder voted. It nowhere appears in the evidence that the votes were not counted as cast, or that any person voted who was not entitled to vote. The meeting was conducted in as orderly a manner as is usual with meetings of that size.

It was alleged by the respondents that before the ballot was cast a motion was made that the roll of the stockholders be called, and that this motion was declared by the chairman to be out of order. The evidence is contradictory upon this point, but it is not material to determine whether such was the fact or not. The roll was called at the beginning of the meeting. The ballots cast were all compared with the roll of stockholders in the hands of the secretary, and each ballot was found to correctly represent the name of the stockholder and the number of shares held by him. It is immaterial, therefore, in the light of the evidence in this case, whether the ballots were taken as the roll was called, or were collected after the roll call. Slips of paper having thereon "For Dissolution" were distributed among the stockholders, to be used as ballots by those who might desire them. Some of these were voted; some were changed to read "Against Dissolution," and other ballots were written by the voters for dissolution or against dissolution as they desired to vote. Opportunity was given to each stockholder to vote as he pleased, and there is no evidence whatever that any ballot was cast which does not correctly represent the purpose of the voter, or that the return was not in accordance with the ballots as cast. A full and true account of the president, secretary and board of directors of all their transactions was presented with the petition, as provided for by the statute. No taxes are due to the commonwealth of Pennsylvania.

The business carried on in the building erected by the corporation was largely of a speculative character in buying and selling petroleum through the purchase and sale of that product represented by pipe line certificates. This kind of business has almost entirely disappeared in the oil district, and has practically ceased in Titusville. Dealing in oil, as conducted at the time the corporation was organized and for several years thereafter, has been to a very large extent, if not wholly, abandoned at that place. The stock of the corporation is not now,

and has not been for several years, profitable to the owners thereof. The public welfare would not be prejudiced by the dissolution of the corporation.

## CONCLUSIONS OF LAW.

The petition in this case is presented under the provisions of the Act of April 9, 1856, P. L. 293, and exhibits a prima facie case for a decree. It is alleged, however, in the answer, that the vote taken at the stockholders' meeting on the resolution to dissolve the corporation was "illegal, fraudulent and void" by reason of the manner in which the voting was conducted. Other objections were raised in the answer relating to the account filed by the officers of the corporation and the extent of the business transacted in the Exchange.

The objection to the manner of the conducting of the election—the allegation of unfairness therein, is not supported by the evidence. The testimony taken makes it clear that there was a full opportunity to vote ; a free and unrestrained expression of the will of the stockholders ; that every person who voted was entitled to vote, and that no person offered to vote who was not entitled to vote ; that every ballot cast had written thereon the name of the voter; that every ballot cast expressed the intention of the voter, and that every ballot cast was counted and returned as it was cast, after an examination of the ballots and the tally sheet. It is not pretended that the announcement as declared by the chair was not an exact and truthful statement of the result of the election. There were some persons in the assembly room not members of the corporation. No one of them, however, voted or offered to vote or in any way whatever interfered with or attempted to control the action of any one of the stockholders so far as has been shown in the case.

If it were conceded that a motion was made as contended by the respondents, asking for the call of the roll at the time the ballots were cast, and that the chair declared the motion to be out of order, such action on the part of the chair would not effect an election which was open, free, fair and honestly returned. The mode of conducting a stockholders' election is not material, generally speaking, if the provisions of the charter or the statute regulating it are not violated. Where it is con-

ducted by proper persons, in an orderly manner, "if the wishes of the corporators have been fairly expressed, informalities in the manner of holding the election are not sufficient to warrant the court in setting it aside:" Cook on Stockholders, sec. 605.

The presumption is that the proceedings were regular, and he who avers the contrary is required to establish the fact by evidence. The objection to the mode of conducting the election was that pressed upon the court's attention at the argument, and that which seems to be relied upon by the respondents.

Changes in the mode of conducting the oil business caused a practical cessation of business in this Exchange several years ago, and the occasion for the erection or maintenance of such a building and the operation of such a corporation, which existed at the time of the organization of this corporation and for several years thereafter, no longer exists. The corporation is not profitable to the stockholders, and no sufficient reason has been shown why it might not with propriety be dissolved. It has not now, and never has had, any such connection with the public welfare as to make it inadvisable to grant the prayer of the petitioners. A majority of stockholders owning a very large proportion of the stock of the corporation voted in favor of the dissolution; and while it is true that a number of the shareholders are opposed to such action, the case, under all of the evidence, presents such a state of facts as entitles the petitioners under the statute to the decree prayed for. A decree is therefore authorized in accordance with the prayer of the petition.

## DECREE.

And now, to wit: May 11, 1897, the petition of the Titusville Oil Exchange corporation for a decree for the dissolution thereof having been heretofore duly presented, and proof having been made that notice of such application for dissolution has been duly given by publication, according to law, and that the said corporation is of the first class, and that no taxes are due and payable to the commonwealth of Pennsylvania; and it further appearing that the prayer of the said petition may be granted without prejudice to the public welfare or to the interests of the corporators, and the said cause came on to be heard at this term and was argued by counsel, thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows:

That the said corporation be, and the same is hereby dissolved, and all and singular its powers, franchises and privileges be and the same are hereby extinguished and determined, provided that this decree shall go into effect upon filing a certified copy thereof and recording the same in the office of the secretary of the commonwealth.

And it is further ordered, adjudged and decreed that the accounts of the directors and officers of the said corporation filed herewith and of record in the proceedings of this case be and the same are hereby approved and confirmed.

Certain stockholders, i. e., P. T. Witherop et al., appealed.

*Errors assigned* were (1) in entering a decree dissolving the Titusville Oil Exchange corporation, which is as follows: " It is ordered, adjudged and decreed as follows : That the said corporation be and the same is hereby dissolved and all and singular its powers, franchises and privileges be and the same are hereby extinguished and dissolved. . . . And it is further ordered, adjudged and decreed that the accounts of the directors and officers of the said corporation filed herewith and of record in the proceedings of this case be and the same are hereby approved and confirmed." (2) In finding the following as a fact : " No person voted who was not a stockholder." (3) In finding as a fact the following : " The business carried on in the building erected by the corporation was largely of a speculative character in buying and selling petroleum through the purchase and sale of that product represented by pipe line certificates. This kind of business has almost entirely disappeared in the oil district and practically ceased in Titusville. Dealing in oil as conducted at the time the corporation was organized and for several years thereafter has been, to a very great extent, if not wholly, abandoned in that place." (4) In finding as a fact the following : " The public welfare would not be prejudiced by the dissolution of the corporation." (5) In not finding as a fact that the dissolution of the Titusville Oil Exchange corporation, would be prejudicial to the interests of the corporators. (6) In finding as a fact the following : " A full and true account of the president, secretary and board of directors of all the transactions was presented with the petition as provided by the statute."

*Julius Byles*, with him *Eugene Mackey*, for appellants.—The controversy in this case has grown largely out of the manner in which the election was conducted and vote taken, which was both informal and disorderly.

We submit that the evidence before the court below was not sufficient properly to satisfy the court that the prayer of the petition could be granted without prejudice to the public welfare or to the interests of the corporators.

*Samuel Grumbine*, for appellee.—The appellants' paper-book has been prepared in disregard of the rules of the appellate court and of the established practice, and attention has been called to the omissions in the motion to non pros.

The petition and answer, and amended answer have not been printed. The pleadings in all cases should form a part of the paper-book: Rundel v. Kalbfus, 125 Pa. 123.

Appellants' argument violates Rule XXI., and does not give a synopsis of all the evidence bearing on the disputed questions of fact: Silliman v. Kuhn, 142 Pa. 461.

The findings of fact of the court below are conclusive on all pivotal questions in this case, and they should not be set aside except for clear error: Stocker v. Hutter, 134 Pa. 19; Brotherton v. Reynolds, 164 Pa. 134; Doran v. McConlogue, 150 Pa. 98.

The mode of conducting the stockholder's election is not material: Cook on Stockholders, sec. 605.

The burden was upon the appellants to show that from irregularity, fraud or other cause, the result of the vote failed to exhibit the purpose of a majority of the stockholders. In this they have utterly failed.

It is the purpose of the law that the will of the majority should control corporate action from the creation of corporation to dissolution: McKean v. Biddle, 181 Pa. 361; Thompson on Corp. secs. 4, 443.

OPINION BY RICE, P. J., October 10, 1898:

This is an appeal from a decree dissolving a corporation. The petition was in due form and exhibited all the facts necessary to give the court jurisdiction under the Act of April 9, 1856, P. L. 293. But when the case was here before, we said:

" Members of the corporation have, however, a clear right to show that the facts are otherwise than as set forth in the petition, and that, from irregularity, fraud or other cause, the election, as returned, failed to exhibit the purpose of a majority of the stockholders.  This right is to be exercised by becoming parties to the proceeding and laying before the court the grounds of objection : " Titusville Oil Exchange's Dissolution, 2 Pa. Superior Ct. 508.  Accordingly the case was sent back for a hearing.  An answer was filed by certain members attacking the regularity and validity of the stockholders' election, and alleging that the corporation could not be dissolved without prejudice to the public welfare and injury to the interests of the corporators, members and stockholders.  A large amount of testimony was taken upon the controverted matters, and, after hearing and due consideration, the court made this decree.

The proceedings in the court below were in every respect regular and in conformity to the practice laid down in our former opinion.  The question whether the prayer of the petition for the dissolution of the corporation may be granted " without prejudice to the public welfare, or the interests of the corporators " is largely addressed to the sound discretion of the court of common pleas, having jurisdiction of the proceeding, and unless its determination of that question is in manifest disregard of either of these interests, or there is some other ground for interference, we cannot overturn the decree.  There is no such abuse of discretion apparent in this case.  On the contrary, the findings of fact, which are fully supported by evidence, amply warranted the court in its conclusion that the decree prayed for was authorized.  At a meeting of the stockholders duly called for the purpose, twenty-eight stockholders owning three hundred and eleven shares voted for dissolution, and twenty-two stockholders owning thirty-six shares voted against it, and no substantial reason for holding that it would be prejudicial to the public welfare or private interests to grant the prayer of this majority is apparent.

We expressly said in our former opinion, that it was not necessary to lay down any hard and fast rules of procedure at a meeting of stockholders convened for the purpose of expressing their wish upon this question ; the aim of supervision by the court of such elections " is to secure a free and full expression

and an accurate record of the will of the stockholders on the subject of the election." These ends being attained, no such mere informalities as appear from the findings in this case are sufficient to warrant the court in setting it aside.

It is unnecessary to discuss these matters in detail. The opinion of the court below contains a clear and accurate statement of all the essential facts and all that need be said in support of the conclusions drawn therefrom. It is sufficient for us to say that we find no error in either which would warrant a reversal of the decree.

Decree affirmed.