## STEINBERG v. AMERICAN BANTAM CAR CO. et al.

Civ. No. 6953.

District Court, W. D. Pennsylvania.

Feb. 27, 1948.

Beck, McGinnis & Jarvis, of Pittsburgh, for plaintiff.

Kenneth G. Jackson, and William D. Sutton (of Thorp, Bostwick, Reed & Armstrong), both of Pittsburgh, Pa., for defendants.

GOURLEY, District Judge.

This proceeding comes before the Court on plaintiff's motion for a preliminary or interlocutory injunction.

On the basis of the verified complaint and sworn affidavits, and after due consideration thereof, the Court granted the follow-

ing Temporary Restraining Order on the 13th day of February, 1948:

"And Now, to-wit, February 13, 1948, the complaint herein having been presented to the Court, together with injunction affidavits, upon consideration thereof and on motion of plaintiff's attorney, it is hereby ordered that Jerome P. Bowes, Jr., Lester Kissel and Paul H. Croll, Proxy Holder Defendants, be restrained from voting any proxies obtained by them for the election of directors of American Bantam Car Company at the shareholders' meeting of said corporation, called for February 16, 1948, or at any adjournment thereof, and that Dean B. Copeland, President, and Paul H. Croll, Secretary, be restrained from holding any election of directors thereat, all until further order of this Court.

"A hearing on the application for interlocutory injunction herein shall be held on February 24th, 1948, at 10 A.M., Court Room Number 2, of which timely notice shall be given to defendants or their counsel.

"Injunction bond to be given in the sum of $5000.00.

"Wallace S. Gourley, D. J."

On the 16th day of February, 1948, the defendants first questioned the jurisdiction of the Court for the reason that the allegations in the complaint did not establish diversity of citizenship between the plaintiff on the one hand, and all of the defendants on the other hand. The Court granted the motion of plaintiff to dismiss as to Lester Kissel and vacated the Temporary Restraining Order as it applied to him since the requisite jurisdictional requirements did not exist, and continued said Order as to all of the other defendants. Comment will be made as to the jurisdictional question in a later part of this opinion.

The motion for a preliminary injunction came on for hearing before the Court on the 24th day of February, 1948, and testimony was offered by the plaintiff in support of his claim for relief. Although the defendants appeared through their counsel, an opportunity was extended by the Court to offer testimony in their behalf. No proof was offered by any of the defendants with the exception of affidavits. The Court advised counsel representing the defendants that it would not consider any facts which were set forth in affidavits, and encouraged the defendants to call the necessary witnesses to establish the facts which appear in affidavit form. The defendants believed, on the basis of the facts presented by the plaintiff, a right to a preliminary injunction had not been established and, therefore, elected to call no witnesses.

█ It is a rule, subject to few exceptions, that a preliminary injunction should not be awarded on ex parte affidavits, unless in a clear case. Lare v. Harper & Bros., 3 Cir., 86 F. 481, 483; Murray Hill Restaurant v. Thirteen Twenty One Locust, 3 Cir., 98 F.2d 578; Warner Bros. Pictures v. Gittone, 3 Cir., 110 F.2d 292.

█ I believe the converse of the rule should be applied to any defense which might be raised to the granting of a preliminary injunction.

The affidavit presented by the defendants was not a presentment of proof in accordance with the procedure followed in this Circuit.

It will be well to review the facts which give rise to this proceeding.

The plaintiff, Max Steinberg, filed the complaint on behalf of himself and such other stockholders of the American Bantam Car Company, a Pennsylvania corporation, as may desire to join therein, urging that said relief be granted in order that a reasonable time will be accorded the Independent Stockholders' Committee of the American Bantam Car Company to solicit proxies in pursuance of the proxy statement approved by the Securities and Exchange Commission of the United States of America.

The plaintiff is a citizen of the state of New York. The American Bantam Car Company (hereinafter referred to as "Bantam") is a Pennsylvania corporation, and its principal office is situate at Butler, Pennsylvania. The defendants Dean B. Copeland and Paul H. Croll are citizens of the Commonwealth of Pennsylvania, directors and President and Secretary respectively of Bantam. The defendant Jerome P. Bowes, Jr., is a citizen of the state of Illinois. Each is a director of Bantam and

Jerome P. Bowes, Jr., Paul H. Croll, and former defendant, Lester Kissel, were designated by the Board of Directors of Bantam as Proxy Holders to vote for directors at a shareholders' meeting of Bantam called for February 16, 1948.

The last fiscal year of Bantam ended June 30, 1947. On August 18, 1947, Miller-Morgan Company, Certified Public Accountants, completed their audit of the books of account of Bantam for the year which ended June 30, 1947, and submitted their audit report on said date to the management of Bantam. On September 3, 1947, the President and Chairman of the Board of Bantam notified the stockholders that the annual meeting which the by-laws provided should be held on the third Monday of September, which in the year 1947 would fall on September 15, 1947, would be postponed indefinitely and that due notice would be given of the date to be selected for the annual meeting. The details of said letter being set forth in Footnote 1.[1]

The Board of Directors on December 9, 1947, forwarded to the stockholders the annual report of Bantam, and advised that due to the death of the President and Treasurer, and Chairman of the Board of Bantam, it would be necessary to again post-pone the annual meeting of said company.[2]

It appears from the financial statement enclosed with said letter of December 9, 1947, that the company sustained a net loss from its operations in the year ending June, 1947 of $1,222,267.62; that its total sales in said year were $3,714,271.53; that as of June 3, 1947 Bantam had a deficit and no earned surplus; that an income tax deficiency of $107,169.44, for the period July 1, 1939 to June 30, 1943, had been assessed against Bantam, from which assessment an appeal is pending in the Tax Court of the United States; and that such tax deficiency and interest might amount in the aggregate to as much as $290,000.

The tax deficiency and interest which might aggregate to as much as $290,000 together with the face amount of the tax liability is not shown on the balance sheet of Bantam as of June 30, 1947, but is merely mentioned in a footnote thereto. Although the cost of goods sold exceeded the sales, the management of Bantam expended in the year ending June 30, 1947 for general administration and engineering expenses the amount of $369,760.10. The balance sheet of Bantam as of December 31, 1947 shows its deficit had increased from $49,444.63 on June 30, 1947 to $291,399.38, from which

---

[1] "To the Stockholders of the American Bantam Car Company

"September 3, 1947

"We have certain contract renegotiation problems with the Government which we had expected would be momentarily concluded and our Annual Report was delayed so as to cover them. However, these renegotiation problems have not yet been concluded but we expect to present our Annual Financial Report to the Stockholders for the year ending June 30, 1947 shortly, whether the renegotiations are complete or not.

"The Company has under consideration a proposal to manufacture a new product in place of our present half-ton trailer. Although this matter has been under discussion for some time, considerable investigation must ensue before your management is in a position to report on this matter to its stockholders.

"Because of the delay in the Annual Report and the new matter about which the management may wish to advise the stockholders, it seems desirable to post-pone the Annual Meeting, normally scheduled for the third Monday in September, to some later date. You will be advised later of the date of the Annual Meeting.

"Yours very truly,
"American Bantam Car Company
"(Signed) F. H. Fenn
"President and Board Chairman"
F. H. Fenn/db

[2] "To the Stockholders:

"December 9, 1947
"We announce with profound sorrow the death on November 29, 1947, of Mr. Francis H. Fenn, Chairman, President and Treasurer of this Company.

"The accompanying Annual Report to Stockholders was prepared and approved by him prior to his death.

"In early November, plans were made to hold the stockholders' meeting about the middle of January. However the sudden death of Mr. Fenn requires a postponement of this meeting until a short time later. An announcement of the date of the meeting will be sent to you in due course.

"By Order of the Board of Directors"

it would appear that Bantam under the present management of said company is operating at a loss of approximately $50,000 per month.

It is set forth, inter alia, in the annual report of Bantam, which was enclosed with the communication of December 9, 1947, that proxies for the annual meeting of stockholders would be requested at a later date, possibly sometime during the first week of January, 1948. However, the notice of the annual meeting of the stockholders to be held February 16, 1948, was forwarded to the stockholders on January 24, 1948, the purpose of said meeting being as follows:

1. To elect Directors;

2. To appoint a firm of Certified Public Accountants to act as auditors of the Company until the annual meeting next following; and

3. To transact such other business as may be lawfully transacted at said meeting or any adjournment thereof.

The notice of said annual meeting of stockholders further provided for the election 'of the same directors who had previously served in a similar capacity with said company. In the year 1947 the Board of Directors held four meetings, and one meeting was held on January 5, 1948. At the meeting of the Board of Directors on November 3, 1947, the annual meeting of shareholders was called for January 3, 1948. This action was rescinded by the Directors at a meeting held December 4, 1947, and the date was set for January 5, 1948. At its meeting held January 5, 1948, said action was rescinded and February 16, 1948 was fixed as the date of the annual meeting of the shareholders.

The plaintiff contends that the notice of the annual meeting of stockholders which was dated January 24, 1948, for the meeting to be held on February 16, 1948, was not received by him until January 28, 1948; that due to the conditions which existed at Bantam, the plaintiff commenced an investigation in an effort to ascertain the reasons for the loss which was being experienced from month to month, and why the company was being operated and managed in the manner which has been heretofore discussed; that after a discussion had been held with various stockholders of Bantam, it was decided by the plaintiff and other stockholders to form an Independent Stockholders' Committee of Bantam, and to extend efforts to secure proxy authorization from the shareholders in order to effect a change in the management and administration of the affairs of the company.

Legal counsel was retained by the plaintiff who requested a copy of the names and addresses of all the stockholders of Bantam from the Corporation Trust Company of Jersey City, New Jersey, transfer agent of Bantam. A photostatic copy was made on the basis of the promise of the plaintiff and shareholders associated with him to pay the cost thereof, which list was to be delivered to counsel for the plaintiff on February 10, 1948. Although efforts were extended by counsel for the plaintiff, through communication with the Chief Legal Counsel and President of Bantam, to secure said list, the Transfer Agent refused to make the stockholders' list available for the reason that the officers of said company refused to grant proper authorization. Although counsel for the plaintiff explained to the officers of Bantam the reasons why the stockholders' list was desired, the representatives of the company stated that it would be necessary to copy the names and addresses of the shareholders from the records of said company at Butler, Pennsylvania.

It further appears that 836,183 shares of common stock had been issued by them, which are owned by over 3,000 different persons. The plaintiff states that due to the enormous amount of time and effort which is involved in the copying of the names and addresses of the stockholders, it was a practical impossibility to secure the information desired in order to communicate with the stockholders a sufficient length of time prior to the date of the annual meeting of the stockholders, which was to be held on February 16, 1948.

As soon as the names and addresses of the stockholders were secured, a notice was forwarded to each of the stockholders in which the facts and circumstances, as they related to the affairs of Bantam, were set forth in detail. In addition thereto, the

Independent Stockholders' Committee requested each stockholder to execute a proxy in which the individuals set forth in the proxy statement would be authorized to vote a change in the management of Bantam, and to elect as directors the individuals set forth in the proxy statement. On February 24, 1948, at the time of the hearing on the preliminary injunction, plaintiff's counsel had been unable to communicate with approximately 400 stockholders due to the fact that all information which was needed as to the identity of said persons had not been secured. Furthermore, at the time of said hearing plaintiff's counsel had received proxy statements which would authorize the election of the directors sponsored by the Independent Stockholders' Committe for a substantial amount of the stock in Bantam.

At the time of the hearing on the preliminary injunction, the plaintiff filed a supplemental complaint. It is set forth by the plaintiff, inter alia, that the sole purpose of requesting the relief desired is to permit and bring about a fair election of directors to be held by the shareholders of Bantam, and to prevent irreparable loss and damage to plaintiff and other shareholders of Bantam. That although clerks have been working in the office of Bantam since February 12, 1948, at the hours permitted by the company, as of the date of the hearing held on February 24, 1948 the complete list of stockholders has not been prepared or checked. That efforts have been extended by counsel for the plaintiff to have a date fixed for the annual meeting of the stockholders within the next ten days to two weeks in order that an opportunity would exist to secure answers from the various shareholders with whom the plaintiff has communicated.

No such agreement could be reached between the parties and if a meeting were held prior to the time that an opportunity would exist to receive answers from the various shareholders, the election of the directors at the annual stockholders' meeting might not result in the will and desires of the shareholders of said company being expressed.

The defendant appealed from the Temporary Restraining Order entered by this Court on the 13th day of February, 1948, and on February 18, 1948, the Circuit Court of Appeals for the Third Circuit dismissed the appeal on the ground that a temporary restraining order entered by a District Court was not appealable.

The Court granted the Temporary Restraining Order on February 13, 1948 for the reason that it was the belief of the Court, in view of all the circumstances which existed, that the plaintiff was entitled to a fair and ample opportunity to secure the names and addresses of the stockholders and to communicate with them in an effort to gain authorization, if they so desired, to bring about a change in the management and the administration of the affairs of Bantam.

Many questions of law arose in the trial of this proceeding, and it was not believed fair or just to any of the parties involved to make final disposition of the petition for a preliminary injunction until an opportunity was had by the Court to consider the principles of law which should be applied. As a result of which, the Court continued the Temporary Restraining Order for a period of two days, or until February 27, 1948, at 10:00 a.m.

The question, therefore, arises whether, under the facts as they exist in the instant case, the request for a preliminary injunction for such additional period of time as might be deemed meet and just should be granted.

Federal jurisdiction is invoked solely on the basis of diversity of citizenship of the party litigants; there is no independent federal question involved before the Court as to the relief which is claimed. As a result thereof, the substantive law to be applied is the law of the Commonwealth of Pennsylvania. Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Mitchell v. Ottinger, 3 Cir., 105 F.2d 334; Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231; Klaxon Company v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

Rules 1 and 2 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, effective September 16, 1938, provide for one form of action and that the rules promulgated therein shall apply in all civil actions whether cognizable at law or in equity. 30 C.J.S., Equity, § 164.

Rule 1—"These rules govern the procedure in the district courts of the United States in all suits of a civil nature whether cognizable as cases at law or in equity, with the exceptions stated in Rule 81. They shall be construed to secure the just, speedy, and inexpensive determination of every action."

Rule 2—"There shall be one form of action to be known as 'civil action'."

Rule 81(e) of the Federal Rules of Civil Procedure provides, inter alia, when a law of a state is referred to, the word "law" includes the statutes of that state and the state judicial decisions construing them.

■ It is, therefore, necessary to consider the substantive law in the Commonwealth of Pennsylvania in deciding whether or not the plaintiff is entitled to equitable relief, which must be applied with due consideration being given the equitable rights to which the plaintiff may be entitled.

At the beginning of the hearing on the petition for a preliminary injunction, the defendant filed a motion to dismiss said proceeding, which was refused by the Court. Said motion provides as follows:

And Now, to-wit, February 24, 1948, come American Bantam Car Company, a Pennsylvania corporation, Dean B. Copeland and Paul H. Croll, · certain of the defendants above named, by their counsel, Thorp, Bostwick, Reed & Armstrong, and respectfully move the Court to dismiss the Bill of Complaint in the above entitled cause, on the following grounds and for the following reasons:

1. The Complaint fails to state a claim against the defendants, or any one of them, upon which relief can be granted.

2. The Complaint fails to state a cause of action.

3. The Complaint in the within action is fatally defective by reason of the fact that plaintiff failed to join as parties defendant herein certain indispensable parties, viz., the shareholders of the corporation whose proxies are now held by defendant proxy holders as agents of said shareholders.

4. The Complaint in the within action is fatally defective for failure to continue as a party defendant, an indispensable party, viz., Lester Kissel, one of the proxy holders.

5. The Court should not exercise its extraordinary power of injunctive relief in aid of the plaintiff, especially in the absence of any averment of fraud or wrongdoing on the part of the defendants or any of them.

6. The Complaint is otherwise improper, invalid and contrary to law.

Wherefore, the defendants move your Honorable Court to dismiss the Bill of Complaint filed in the within action.

■ The general equity powers of a court are not limited by the provisions of the Business Corporation Law, and the Legislature in the Commonwealth of Pennsylvania has seen fit to provide that the several courts of common pleas shall have the jurisdiction and powers of a court of chancery, inter alia, to the supervision and control of all corporations. Act of June 16, 1836, P.L. 784, § 13, 17 Purdon's Penna. Statutes Annotated § 281.

The Court will, therefore, consider the various reasons assigned by the defendants in support of their motion to dismiss the proceeding, and in passing upon the question as to whether the preliminary injunction should be granted.

The first and second reasons set forth in the motion to dismiss can be considered together since they involve the same legal proposition—

1. The Complaint fails to state a claim against the defendants, or any one of them, upon which relief can be granted.

2. The Complaint fails to state a cause of action.

It is contended by the defendants that since no legal right existing under the law of the Commonwealth of Pennsylvania had been denied to the plaintiff, no basis exists for the Court to grant the equitable relief desired.

The Corporation Act of the Commonwealth of Pennsylvania, Act of May 5, 1933, P.L. 364, 15 Purdon's Penna. Statutes Annotated, § 2852-308 and § 2852—510, provides as follows:

"2852-308. Corporate records; inspection

"A. Every business corporation shall keep at its registered office an original or duplicate record of the proceedings of the shareholders and of the directors, and the original or a copy of its by-laws, including all amendments or alterations thereto to date, certified by the secretary of the corporation, and shall keep at its registered office, or at the office of a transfer agent or registrar within this Commonwealth, an original or a duplicate share register, giving the names of the shareholders in alphabetical order, and showing their respective addresses, the number and classes of shares held by each, the number and date of certificates issued for the shares, and the number and date of cancellation of every certificate surrendered for cancellation. Every such corporation shall also keep appropriate, complete and accurate books or records of account, which may be kept at its registered office, or at its principal place of business.

"B. Every shareholder shall have a right to examine, in person or by agent or attorney, at any reasonable time or times, for any reasonable purpose, the share register, books or records of account, and records of the proceedings of the shareholders and directors, and make extracts therefrom."

"2852—510. Voting lists

"The officer or agent having charge of the transfer books for shares of a corporation shall make, at least five days before each meeting of shareholders, a complete list of the shareholders entitled to vote at the meeting, arranged in alphabetical order, with the address of and the number of shares held by each, which list shall be kept on file at the registered office of the corporation, and shall be subject to inspection by any shareholder at any time during usual business hours. Such list shall also be produced and kept open at the time and place of the meeting, and shall be subject to the inspection of any shareholder during the whole time of the meeting. The original share ledger or transfer book, or a duplicate thereof kept in this Commonwealth, shall be prima facie evidence as to who are the shareholders entitled to examine such list or share ledger or transfer book, or to vote, in person or by proxy, at any meeting of shareholders. An officer or agent having charge of the transfer books who shall fail to prepare the list of shareholders, or keep the same on file for a period of five days, or produce and keep the same open for inspection at any meeting, as provided in this section, shall be liable to any shareholder suffering damages on account of such failure, to the extent of such damages."

It appears that the by-laws of Bantam require that an annual meeting of its shareholders for the election of directors be held on the third Monday of September of each year, which was the 15th day of September, in 1947. No notice of such a shareholders' meeting was given by any representative of the defendant corporation, notwithstanding the duty which existed under the Corporation Law in the Commonwealth of Pennsylvania so to do.

The Corporation Law of the Commonwealth of Pennsylvania, as it relates to the election of directors by the shareholders, provides as set forth in Footnote 3.[3]

---

[3] "A. Meetings of shareholders may be held at such place within or without this Commonwealth as may be provided in the by-laws. Unless the by-laws provide otherwise, all meetings of the shareholders shall be held in this Commonwealth at the registered office of the corporation.

"B. The by-laws may provide for the number and the time of meetings of shareholders, but at least one meeting of the shareholders shall be held in each calendar year for the election of directors, at such time as shall be provided in the by-laws. Failure to hold the annual meeting at the designated time shall not work any forfeiture or dissolution of the corporation. If the annual meeting shall not be called and held within six months after the designated time, any shareholder may call such meeting.

"C. Special meetings of the shareholders may be called at any time by the president, or the board of directors, or the holders of not less than one-fifth of all the shares outstanding and enti-

■■ A by-law providing that an annual meeting of shareholders is to be held at a certain time is mandatory. Where the annual meeting is not called or held on the date prescribed by the by-laws, it becomes the duty of the directors within a reasonable time thereafter to call the annual meeting. 18 C.J.S., Corporations, § 542.

The defendants contend that compliance has been made with the provisions of the Corporation Act in that the plaintiff or his legal representative has been permitted access to the shareholders' records of said company, and that the shareholders' list was made available at least five days' before the annual stockholders' meeting to be held on February 16, 1948.

■ The right of a stockholder to vote upon his stock at all meetings of shareholders appears to be a right inherent in the ownership of the shares, and as such is a property right.

■ I believe that a shareholder in a corporation has the unequivocal right to examine the books of a corporation in which he is interested at any reasonable time or times for any reasonable purpose. The right should not be used to gratify curiosity or speculative purposes and should be in good faith, and for a specific purpose. Due to the limitations on time which existed in the instant case, the provisions of the Corporation Law as to the examination of the stock records by the plaintiff could not under any stretch of imagination have been made with sufficient thoroughness to make available the information which was desired and needed by the plaintiff. If the stockholders' list which had been requested by counsel for the plaintiff to the transfer agent of said company had been made available, this litigation would, no doubt, not be before the Court, since sufficient time would have been available to communicate with the various stockholders. The situation which exists is, therefore, caused by the actions of Bantam in requiring the plaintiff to comply strictly with the provisions of the Corporation Law as to the examination of the stock records.

The question, therefore, arises—will the plaintiff suffer irreparable damage by the refusal to grant the preliminary injunction?

■ It is necessary before a preliminary injunction can be granted for the plaintiff to establish that he will suffer an irreparable loss from interference with rights previously enjoyed by the plaintiff if the relief requested is not granted. Murray Hill Restaurant, Inc., v. Thirteen Twenty One Locust, supra.

■ I do not believe that the Courts should permit, on the part of those in control of a corporation, through the reliance on technicalities or strict compliance with the provisions of law, to place a stockholder in a position where he is denied the right, due to limitations on time, to communicate or draw to the attention of all the stockholders of the corporation facts and circumstances which relate to the detailed condition of the company. When such information is known, it might result in the majority of the stockholders reaching the conclusion that a change should be made in the Board of Directors or the administrative officers of the corporation. This is especially true where the affairs of the corporation have been conducted in such a manner that a substantial financial loss is being sustained from month to month over a prolonged period of time.

■ As far as the internal affairs of a corporation are concerned, I am aware that the Court should only intervene when necessary to secure a free and full explanation, and an accurate record of the will of the

---

tled to vote at the particlular meeting, or by such other officers or persons as may be provided in the articles or by-laws. At any time, upon written request of any person entitled to call a special meeting, it shall be the duty of the secretary to call a special meeting of the shareholders, to be held at such time as the secretary may fix, not less than ten nor more than sixty days after the receipt of the request. If the secretary shall neglect or refuse to issue such call the person or persons making the request may do so.

"D. Adjournment or adjournments of any annual or special meeting may be taken, but any meeting at which directors are to be elected shall be adjourned only from day to day until such directors have been elected." 15 Purdon's Penna. Statutes Annotated, § 2852—501.

stockholders on the subject in question. It appears to me that the election of directors for the defendant company, under the circumstances which exist in this case, is vital and of the greatest importance to the future welfare of this company. The election of the directors should be orderly and with a full and complete opportunity for a participation of all the stockholders after being fully informed and advised as to the detailed facts and circumstances which exist as to the affairs of the company.

I believe the Court in the exercise of its equitable powers should make positive that a fair and representative meeting should be made available to choose the directors of Bantam by the stockholders of said company.

In view of the barriers which have confronted the plaintiff in securing the names and addresses of the company's stockholders, such a meeting could not be held without the aid of injunctive relief.

The Corporation Act in Pennsylvania affords minimum safeguards for the protection of the rights of shareholders in a corporation, but the Legislature recognized that situations might arise where some additional relief would be required to protect the interests of shareholders.

This is best exemplified in Section 6 of the Corporation Act wherein it is provided that "This act shall not be deemed to curtail in any manner whatsoever the law or equity jurisdiction of the courts of this Commonwealth." 15 Purdon's Penna. Statutes Annotated, § 2852—6.

Furthermore, when the Corporation Act was enacted, the Legislature allowed to remain on the statute books the Act of 1836, supra, which specifically gave to the state courts in this Commonwealth equitable powers to supervise and control the affairs of a corporation.

The equities which exist predominate greatly in favor of the plaintiff.

■ The Corporation Act is mandatory wherein it is provided that an annual meeting of the shareholders shall be held each year at the time provided in the by-laws. This was not done.

The reasons given for not calling the shareholders' annual meeting do not, in my judgment, constitute just and sound reasons. This thought is borne out by the fact that the corporation was losing a substantial amount of money each month, a change was taking place from the War Period to the Post War Era, the President of the company had died, and for some reason the Board of Directors could not seem to finally agree when the annual stockholders' meeting should be held until February 16, 1948 was chosen.

It is self-evident that a large number of the stockholders did not have detailed knowledge of the condition of the corporation. This fact is best shown by the actions of approximately 700 stockholders out of 3,080 in signing the proxy authorizations in favor of the Independent Stockholders' Committee represented by the plaintiff, which had been received as of 11:00 a.m. on February 24, 1948. Some of said stockholders had withdrawn their previous proxy authorizations given in favor of the proxy holders selected by the Board of Directors of the defendant company. Furthermore, as of February 24, 1948, time had not permitted communication with some 400 of the stockholders. Also the stockholders are located at all points in the United States, and in a great many instances time has not permitted a response from any individuals who might return their proxy authorizations.

I cannot reason on what principle of equity or justice the defendants should be permitted to proceed with the stockholders' election of directors, when so many of those financially interested in the company apparently desire to be represented by the plaintiff or Independent Stockholders' Committee after detailed facts have been laid before them as to the condition of the company.

It was difficult and almost impossible for the Legislature to lay down any hard and fast rules under which the courts, in the exercise of their equitable powers, should interfere with the internal affairs of a corporation.

It is also impossible for the courts to say everything on one side of the ledger justifies intervention by the exercise of equitable powers, and all on the other side

438

does not. Each case must be approached under its own peculiar facts.

■ It is my opinion that the pleadings, and testimony introduced in support thereof, state a claim or cause of action upon which relief can be granted.

The third and fourth reasons set forth in the motion to dismiss should also be considered together since the law applicable thereto overlaps in a great many particulars.—

3. The Complaint in the within action is fatally defective by reason of the fact that plaintiff failed to join as parties defendant herein certain indispensable parties, viz., the shareholders of the corporation whose proxies are now held by defendant proxy holders as agents of said shareholders.

4. The Complaint in the within action is fatally defective for failure to continue as a party defendant, an indispensable party, viz., Lester Kissel, one of the proxy holders.

■ In the Federal Courts parties may be classified as (1) formal or nominal, (2) proper or necessary and (3) indispensable, and by technical usage "necessary" is used in contradistinction to "indispensable". Burton-Sutton Oil Co., Inc., v. Commissioner of Internal Revenue, 5 Cir., 150 F.2d 621, 160 A.L.R. 961.

■ A necessary party is a person having an interest in the controversy, and who ought to be made a party in order that the Court may act on the rule which requires it to decide on, and finally determine the entire controversy, and to complete justice by adjusting all the rights involved in it. However, if their interests are separable from those of the parties before the Court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, they are not indispensable parties. An indispensable party is a person who not only has an interest in the controversy but an interest of such a nature exists that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good con-

science. State of California v. Southern Pacific Co., 157 U.S. 229, 249, 15 S.Ct. 591, 39 L.Ed. 683; 30 C.J.S., Equity, §§ 133 to 148 inclusive; Wyoga Gas & Oil Corp. v. Schrack et al., D.C., 27 F.Supp. 35; Id., D.C., 29 F.Supp. 582.

The proxy authorization which was given by the various stockholders to the individuals recommended by the Board of Directors of the defendant company reads, inter alia, as follows: "The undersigned stockholder of the American Bantam Car Company hereby constitutes and appoints Jerome P. Bowes, Jr., Lester Kissel and Paul H. Croll, and each of them, the true and lawful attorneys, agents and proxies of the undersigned, with full power of substitution and revocation for and in the name, place and stead of the undersigned, to vote all the stock of the said corporation which the undersigned may be entitled to vote at the annual meeting of stockholders thereof."

■ The proxy holder, therefore, stands in the position of peculiar trust and responsibility to the shareholder.

■ A shareholder in a business corporation, unlike a citizen voting at a public election, or a director of a corporation, may appoint another to vote for him, since he is not a fiduciary with respect to his fellow shareholders. Restatement of the Law of Agency, American Law Institute, Par. 18, subpara. b.

■ In the instant case there are over 3,000 shareholders of the common stock who would be entitled to vote at the shareholders' meeting for the election of directors. These persons are scattered throughout the United States, and in view of the question which is involved in this case, I do not believe it necessary to join the various shareholders who gave the proxy authorizations to the individuals designated by the Board of Directors, and who are authorized as attorneys or universal agents to act for said shareholders at the annual meeting of the stockholders. They would fall within the category of proper or necessary parties but they are not, in my opinion, indispensable parties.

■ I believe that a proxy holder would fall within one of the rare categor-

ies known to the Law of Agency as a universal agent for a particular purpose. A universal agent is one appointed to do all that a principal may personally do and may lawfully delegate the power of so doing. 2 C.J.S., Agency, § 3, subsection (e).

The appointment of the proxy holders by the shareholders amounted to a designation of said individuals as jointly and severally being authorized to act as the lawful attorneys, agents and proxies of the shareholder who gave the authorization. Until this appointment was revoked by the shareholder who gave the authority, said individuals jointly and severally were the only persons who had authority to act for or vote the shares of stock owned by the respective shareholders.

Under the circumstances, I believe it proper for the proxy holder as a universal agent to be joined as a party defendant without the joinder of the principal shareholder since the relief which is sought against him is that of a trustee for the shareholder, with active duties to perform. 3 C.J.S., Agency, § 303, subpara. b(2); Scoutt v. Kack, 8 Cir., 73 F. 900.

In addition, each of the individuals who was given the proxy authority by the shareholders is also a stockholder of the defendant company. Courts are not infrequently called upon to proceed with causes in which the number of those interested in the litigation is so great as to make it difficult or impossible to join all because some are not within the jurisdiction, or because their whereabouts is unknown, or where if all were made parties to the suit, its continued abatement by the death of some would prevent or unduly delay a decree. In such cases where the interests of those not joined are of the same class as the interests of those who are, and where it is considered that those who are joined fairly represent those who are not in the prosecution of the litigation of the issues in which all have a common interest, the court will proceed to a decree. Hansberry et al. v. Lee et al., 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741; 30 C.J.S., Equity, § 145.

Federal courts do not have jurisdiction on the ground of diversity of citizenship unless that diversity exists between all plaintiffs on one hand, and as to the defendants, on the other hand, at the time suit is instituted. Huester et al. v. Gilmour, D. C., 13 F.Supp. 630; Morris, Wheeler & Co., Inc., v. Rust Engineering Co. et al., D.C., 4 F.R.D. 307; Walls v. Universal Pictures Co., D.C., 64 F.Supp. 852; Mirabile Corp. v. Purvis et al., C.C., 143 F. 920. However, this rule is subject to exceptions.

The absence of formal or necessary parties will not defeat jurisdiction of the court, although a Federal Court cannot proceed to a final decree where there is an absence of indispensable parties. Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 48, 30 S.Ct. 10, 54 L.Ed. 80; Halpin v. Savannah River Electric Co., 4 Cir., 41 F.2d 329, certiorari denied 282 U.S. 848, 51 S.Ct. 27, 75 L.Ed. 752; 30 C.J.S., Equity, §§ 133 to 148 inclusive.

Since the proxy designation was joint and several, Lester Kissel did fall within the category of a proper or necessary party, but he could not be construed an indispensable party since it is possible for the court to proceed to a decree, and do complete and final justice to the parties who are party defendants other than Lester Kissel.

Rule 21 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c provides: "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any state of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately."

The plaintiff, after the question of jurisdiction was first raised by the defendant, asked leave of Court to discontinue the proceeding against Lester Kissel who was a resident of the same state as the plaintiff. The Court believed it proper to grant the motion, and so ordered, but permitted the Restraining Order to stand as it applied to all of the other defendants. This action appeared to the Court to be proper, and in accordance with settled law. F. X. Hooper Co., Inc., v. Samuel M. Langston Co. et al., D.C., 56 F.Supp. 577.

■ Where a person is a proper party to a litigation but not an indispensable party, a motion to dismiss the proceeding should be granted unless the action is discontinued as to the party who does not have diversity of citizenship. Hastings v. Chrysler Corp., D.C., 3 F.R.D. 274; Diepen et al. v. Fernow et al., D.C., 1 F.R.D. 378.

■■ I do not believe that Lester Kissel, one of the proxy holders, was such an indispensable party as to require him to be a party defendant in order to adjudicate the question which exists. If this line of thought was carried into practical application, it would be necessary for the plaintiff to join all stockholders of the defendant company as party defendants before relief could be granted by the Court. Where the obligations, duties or interests of the defendant are separable from those of other parties, so that the Court can proceed to a decree as it relates to the parties before the Court, without affecting other persons not before the Court, such persons are not indispensable parties.

The fifth reason set forth in the motion to dismiss is—

5. The Court should not exercise its extraordinary power of injunctive relief in aid of the plaintiff, especially in the absence of any averment of fraud or wrongdoing on the part of the defendants or any of them.

In Paragraph 16 of the supplemental complaint it is alleged—

16. To permit the election of directors of Bantam without its shareholders having an opportunity to determine whether or not they desire to continue the present management of Bantam or to substitute therefor a new management of Bantam as proposed by the Independent Stockholders' Committee would work a fraud upon the shareholders of Bantam and deprive the shareholders of their right to determine whom they desire to serve as directors of Bantam and determine its policies. Plaintiff further avers that unless said election of directors is enjoined and ordered to be held at a reasonable date hereafter, plaintiff and other shareholders similarly situated will be irreparably injured in their rights and interests as shareholders of Bantam, for which he and they will have no adequate remedy at law.

■ The supervision of corporate elections, on the points left unsettled by the legislature, is necessarily part of the duty with which the courts are charged. The aim of this supervision is to secure a free and full expression and *accurate record of the will of the stockholders on the subject of the election*. (Emphasis supplied.) For this purpose it is not necessary to lay down hard and fast rules of procedure. It is sufficient in the main to indicate guiding principles. Titusville Oil Exchange's Dissolution v. Witherop, 2 Pa.Super., 508, 527; In re Titusville Oil Exchange, (Appeal of Witherop et al.), 8 Pa.Super. 304, 312.

■ Where the stockholders are unable to investigate the affairs of a corporation, a sufficient length of time prior to the annual meeting of the stockholders, so as to secure the will of all before the election of directors, I believe a court of equity should exercise its undoubted authority to supervise and control the corporate election with reasonable limitations. Deal v. Erie Coal & Coke Co., 248 Pa. 48, 93 A. 829; Lutz v. Webster, Appellant, 249 Pa. 226, 94 A. 834; Jenkins et al. v. Baxter et al., 160 Pa. 199, 28 A. 682; Tunis et al. v. Hestonville, Mantus & Fairmount Pass. R. Co., 149 Pa. 70, 24 A. 88, 15 L.R.A. 665.

■ I believe the facts in this case establish a constructive fraud on the plaintiff and those he represents since—

(a) The stockholders' meeting was not held at the time required by the by-laws of the corporation.

(b) The audit report of the financial affairs of the company was submitted to the management of the company on August 18, 1947 for the fiscal year ending June 30, 1947.

(c) On September 3, 1947, the Board of Directors advised the stockholders of the company the annual financial report would be available shortly. When this letter was written the financial report had been in the possession of the management since August 18, 1947 for the fiscal year ending June 30, 1947.

(d) The report as to the affairs of the company was not prepared until November 26, 1947.

(e) The report of the status of the company was not submitted to the shareholders until December 9, 1947.

(f) The Board of Directors on November 3, 1947, fixed January 12, 1948 for the annual meeting of the shareholders.

(g) The last mentioned action of the Board of Directors was rescinded on December 4, 1947, and the annual meeting of the shareholders was set for January 21, 1948.

(h) The President of the company had died on November 29, 1947, and this event certainly should have prompted the annual meeting of the shareholders to be held at the earliest possible date.

(i) At a meeting of the Board of Directors on January 5, 1948, the action which fixed the meeting for January 21, 1948, was rescinded and the meeting set for February 16, 1948.

(j) The plaintiff was denied a stockholders' list although he agreed to pay for the same and gave the detailed reasons for his request, which made impossible the securing of the names and addresses of the stockholders a reasonable time before the meeting set for February 16, 1948.

■ Where it has been shown in advance of the annual meeting of the stockholders of a corporation that by reason of fraud, violence or other unlawful means a fair and honest election cannot be held, the courts of equity should intervene to supervise and control corporate elections. Jenkins et al. v. Baxter et al., 160 Pa. 199, 28 A. 682.

■ The relief sought in the present case calls for an extraordinary process. It is the rule of this Circuit and in the Commonwealth of Pennsylvania that the power to grant the extraordinary remedy of injunction should be exercised by courts with great caution and applied only in very clear cases. Barker Painting Co. v. Brotherhood of Painters et al., 3 Cir., 15 F. 2d 16; Murray Hill Restaurant, Inc., v. Thirteen Twenty One Locust, 3 Cir., supra.

■ The object of a preliminary injunction is simply preventive, to maintain things as they are until the rights of the parties can be considered and determined after a full hearing. It is designed to compel the party against whom it is granted to maintain his status merely until the matters in dispute shall by due process of the courts be determined. Audenried v. Philadelphia & Reading Railroad Co., 68 Pa. 370, 8 Am.Rep. 195; Fredericks et al. v. Huber et al., 180 Pa. 572, 37 A. 90; Warner Bros., Inc., v. Gittone, supra; Ball v. Paramount Pictures, Inc., D.C., 57 F. Supp. 505; Commonwealth v. Cohen, 150 Pa.Super. 487, 28 A.2d 723; Pennsylvania Public Utility Commission v. Israel et al., 356 Pa. 400, 52 A.2d 317; Mahoney Twp. Authorities v. Draper et al., 356 Pa. 573, 52 A.2d 653.

It is also necessary for the plaintiff to show irreparable loss resulting from an interference with rights previously enjoyed by the plaintiff. Warner Bros., Inc. v. Gitton, supra.

■ Irreparable loss resulting from refusal to accord the plaintiff a new status as distinguished with interference of rights previously enjoyed by him does not furnish the basis for interlocutory relief. I believe in the instant case the last actual noncontested status which preceded the pending controversy was the calling of the meeting of the stockholders for the election of a Board of Directors. The irreparable loss which would be sustained by the plaintiff if the interlocutory relief were not granted is the interference with the rights which the plaintiff previously enjoyed to have full and complete access to the records of the company, which set forth the names and addresses of the various shareholders, a sufficient length of time in advance of the annual meeting of the stockholders, to enable him to communicate with the stockholders as to the conditions and status of the company.

The question must, therefore, be approached from a common sense, sound, fair and impartial standpoint. The ultimate aim to be achieved or the conclusion to be reached is—What will secure or bring about a free and full expression of the will of the stockholders?

442

The answer in this case can be reached without a minute's hesitation after consideration is given to the facts and the applicable principles of law. A change in the management or the administration of the affairs of the corporation might be the answer to prevent great and continued financial loss to the shareholders. The will and desire of all possible shareholders should be considered, and this cannot arise without the intervention of the Court.

 I believe the facts in this case require the Court, in the exercise of its equitable powers, to grant the preliminary injunction for a limited period of time in order to make positive that a fair election of directors will be held by the stockholders.

An appropriate Order will be filed.